UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ALVEZ WRIGHT | CIVIL ACTION NO. 3:09-CV-1544 |
|     LA. DOC #500091 | |
| VS. | SECTION P |
| | JUDGE DONALD E. WALTER |
| EDWARD THOMPSON | MAGISTRATE JUDGE HAYES |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Alvez Wright, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 15, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Avoyelles Parish Corrections Center, Marksville, Louisiana; however, he complains that he was the victim of sexual harassment and physical violence by a Corrections Officer while he was incarcerated at the Lincoln Parish Detention Center (LPDC) in September and/or October 2008. Plaintiff sued LPDC Warden Edward Thompson, Corrections Officer Joel Freeman,[1] and "LaSalle Management" and asked only for "... legal compensation for pain, suffering and mental anguish..."

This matter was originally filed in the Alexandria Division. On January 8, 2010, Magistrate Judge Kirk recommended dismissal.  [Doc. 7] Plaintiff objected, however, and Judge Drell transferred the complaint to the Monroe Division and directed the undersigned to provide a further report and recommendation. [Doc. 9] On March 17, 2010, the undersigned directed

---

[1] Elsewhere referred to as "Joel Phoenix."

plaintiff to amend his complaint to provide additional information.[2]  On April 8, 2010, he filed a

response to that order. [Doc. 11]

*Background*

## 1. Original Complaint

In his original complaint filed on September 15, 2009, plaintiff complained of a single

incident which he claimed occurred "between the months of Sept. or Oct. 2008."[3]  On some

unspecified date in the fall of 2008, plaintiff was inside a holding cell. Sgt. Freeman (referred to

as "Phoenix" in the original complaint) asked him for a "sexual favor" then left and returned

again. Upon his return, Phoenix opened the cell door and "kept insisting me for sex." He located

an "oil bottle" in plaintiff's cell, put some on his hand and touched plaintiff's penis. Plaintiff then

ran out of the cell seeking help and Freeman "got very physical." Lt. Douglas and an unnamed

---

[2] The plaintiff was instructed as follows: "Rule 8 of the Federal Rules of Civil Procedure does not require explicit detail, but it does require a plaintiff to allege specific facts which support the conclusion that his constitutional rights were violated by each person who is named as defendant.  This conclusion must be supported by specific factual allegations stating the following:

(1)  the name(s) of each person who allegedly violated plaintiff's constitutional rights;
(2)  a description of what actually occurred or what each defendant did to violate plaintiff's rights;
(3)  the place and date(s) that each event occurred; and
(4)  a detailed description of the alleged injury sustained as a result of the alleged violation.

Plaintiff has named three defendants – Warden Thompson, "LaSalle Management," presumably a corporation, and an individual alternatively referred to as Joel Freeman or Joel Phoenix –  but he has alleged fault only on the part of Freeman/Phoenix.  He should amend his complaint to provide the detail demanded by Rule 8 as outlined above, and in accordance with the law regarding corporate liability, and supervisory liability as set forth in foot note 5.

Further, plaintiff should state whether he was a detainee awaiting trial, or a convict at the time of the complained of events. He should provide the dates he was confined at the offending institution and he should state the DATE or DATES that EACH of the complained of events occurred along with a detailed description of the INJURY he claims to have sustained as a result of EACH alleged violation of his Constitutional Rights." [Doc. 10]

[3] In a letter addressed to the Clerk of Court seeking a complaint form and *in forma pauperis* application, plaintiff alleged that the incident in question occurred in September 2008. [Doc. 1]

corrections officer arrived,  "calmed the situation," and returned plaintiff to his cell where he

observed Freeman  "scoop up a rubber glove that he dropped on the floor which he intended to

use for sexual protection." [Doc. 3, ¶ IV]

### 2. Objection [Doc. 8]

On January 8, 2010, Magistrate Judge Kirk. recommended dismissal of the complaint

having observed that plaintiff had alleged only a single brief physical encounter that did not

produce any physical injury.[4]  Magistrate Judge Kirk also recommended dismissal of plaintiff's

claim for money damages for mental or emotional injury pursuant to 42 U.S.C. §1997e(e) since

plaintiff had alleged no physical injury. [Doc. 7, p. 4][5]

Plaintiff objected to the Report and Recommendation on January 25, 2010.  In his

objection, he alternatively referred to the defendant as "Sgt. Joel Freeman" or "Sgt. Phoenix." He

then alleged a new claim for relief. According to plaintiff, on some unspecified date "Freeman"

was assigned "to give us showers" and made comments on different occasions about how he

wanted to see plaintiff's penis.  When plaintiff refused to perform "sexual favors," he was

punished by not being allowed to shower. He claimed that he and his cell mates were not allowed

to shower for a week.

He further claimed to have sustained "body injuries," namely scars and bruises,  when

---

[4]  Magistrate Judge Kirk observed: "Plaintiff claims that on one particular date, Sgt. Phoenix touched his penis. He dos not allege that Phoenix ever touched him before or after this single incident, and he does not allege the kind of 'severe and repetitive' abuse or wanton and sadistic infliction of pain that rises to the level of an Eighth Amendment violation. The single, brief physical contact by Phoenix is not sufficiently serious and pervasive to permit redress under the constitution." [Doc. 7, p. 3]

[5]  The Magistrate Judge noted, "Even if there had been an Eighth Amendment violation, Plaintiff's claim for monetary damages would be subject to dismissal due to the lack of any physical injury ... [since] no federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." [Doc. 7, p. 4]

Freeman became aggressive and struck plaintiff with his portable radio. According to plaintiff, after this incident, he became so depressed that he tried to choke himself by swallowing a chicken bone. According to plaintiff, the bone remains in his stomach or intestines and he continues to suffer from pain and bleeding. Plaintiff now must take laxatives to help him "with a bowel movement."

### 3. Amended Complaint [Doc. 11]

As noted above, plaintiff was directed to amend his complaint to provide additional factual details.  On April 8, 2010, he submitted his "Final Statements." Therein he alleged that Warden Thompson violated his rights "... by not thoroughly investigating the situation in which my health is involved and has become life threatening." [Doc. 11, ¶A-1]

For the first time, he alleged fault on the part of a person identified as Dr. Hearne who allegedly "... rejected all my statements and neglected my rights to be further examined in this case of emergency."  [Doc. 11, ¶A-2]

With regard to defendant Freeman/Phoenix, he alleged, "He also violated my rights by constantly asking me for sexual favors and when I refused he would punish me and others whom where in cells beside me by not letting us shower nor make phone calls. Also, whenever he opened my cell on the October incident to provide sexual favors my rights were violated. The constant insisting and the use of physical force by striking me with his walkie-talkie or radio put him in violation of my rights."  [Doc. 11, ¶A-3]

Plaintiff alleged that LaSalle Management had a duty to inform employees about proper procedure when dealing with inmates and, the duty to have a supervisor present at all times when their sergeants come in contact with inmates. According to plaintiff, this defendant breached that

4

duty. [Doc. 11, ¶D]

Plaintiff again alleged that the main incident occurred sometime in October 2008, but "consistent harassing dates happened prior to the October [2008] event" and his visit with Dr. Hearne happened on the Friday following the October event. [Doc. 11, ¶B 1, 2, and 4]

Finally, plaintiff alleged that he sustained the following injuries "bruises to the body and head" and "after depression stage the swallowing of the chicken bone became stuck within my intestines." [Doc. 11, ¶C]

*4. Summary of Plaintiff's Complaints*

Plaintiff filed an original complaint in which he alleged only that Sgt. Freeman/Phoenix touched his penis and then "got very physical" when plaintiff fled from his cell. In addition to being uncertain concerning the identity of the perpetrator, plaintiff was also uncertain as to whether this event occurred in September or October 2008.  After Magistrate Judge Kirk recommended dismissal of his complaint, plaintiff, for the first time alleged another incident when Freeman/Phoenix asked to "see" plaintiff's penis, and when plaintiff refused, Freeman/Phoenix denied plaintiff use of the showers for one week. Plaintiff also for the first time alleged that he sustained "body injuries" when Freeman/Phoenix struck him with a radio. Finally, in his Amended Complaint, plaintiff alleged for the first time that he was denied treatment by a physician identified as Dr. Hearne.  Again, for the first time, plaintiff alleged that Freeman/Phoenix "constantly" asked him for sexual favors. As noted below, federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

5

Therefore, read liberally, and taken as true for the purposes of this Report, plaintiff's complaint may be summarized as follows:

1. Sometime in either September or October 2008, Sgt. Freeman or Sgt. Phoenix was assigned to supervise inmate showers; he asked to see plaintiff's penis and when plaintiff refused, he punished plaintiff and others by not allowing them to shower for a week.[6]

2. On some unspecified date in September or October 2008, Freeman/Phoenix asked plaintiff for a "sexual favor." He found a bottle of oil in plaintiff's cell, put some on his hand, and touched plaintiff's penis. Plaintiff ran from the cell and Freeman/Phoenix "got very physical" and apparently struck plaintiff with his portable radio.[7]  The blow caused bruises on plaintiff's head.

3. Plaintiff became depressed as a result of Freeman's/Phoenix's  harassment. Plaintiff claimed that he swallowed a chicken bone in an attempt to commit suicide, and the bone remains lodged in his intestines causing un-described injuries. [Doc. 8]

4. Dr. Hearne rejected his statements and neglected to provide a thorough examination of plaintiff.  (It is not clear whether plaintiff sought medical attention for the bruises caused by Sgt. Freeman/Phoenix or for the injuries sustained following plaintiff's ingestion of a chicken bone. [Doc. 11]

### *Law and Analysis*

---

[6] Plaintiff did not mention this incident in his original complaint. [Doc.3] He mentioned a single incident of harassment in his Objection [Doc. 8], and, in his Second Amended Complaint he alleged that "consistent harassing dates happened prior to the October [2008] event." [Doc. 11]

[7] Plaintiff did not describe the physical assault and did not allege any physical injury in his original complaint. [Doc. 3] In his objection he alleged that Freeman/Phoenix struck him with his radio causing scars and bruises. [Doc. 8] In his Amended Complaint he alleged that he sustained only "bruises to his body and head." [Doc. 11]

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2

F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be

granted if  it appears that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint. Of course, in making this determination, the

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given

broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A.

(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).  Federal courts, with regard to prisoner

suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and

dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490

7

U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed an original complaint, an objection, and an amended complaint. In each instance he has alleged additional facts in support of his complaint. He need not be afforded another opportunity to amend.

### 2. Sexual Abuse

As noted by Magistrate Judge Kirk in his well-reasoned Report and Recommendation, sexual abuse of a prisoner by prison officials may amount to cruel and unusual punishment in violation of the Eighth Amendment.  *See Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997).  A two-part test determines whether prison officials have violated the Eighth Amendment with regard to sexual abuse or physical assault.  *See Harper v. Showers*, 174 F.3d 716, 719-720 (5th Cir. 1999)(citations omitted). First, the sexual abuse or assault must be objectively sufficiently serious; second, the prison officials involved must have acted with deliberate indifference, i.e., a sufficiently culpable state of mind.  *See Boddie*, 105 F.3d at 861; *Harper*, 174 F.3d at 719-720; *Copeland v. Nunan*, No. 00-20063, 2001 WL 274738, *2 (5th Cir. Feb. 21, 2001).  Not every incident of sexual abuse will meet this test.  Only "severe or repetitive" sexual abuse rises to the level of an Eighth Amendment violation.  *See Boddie*, 105 F.3d at 861.  Of

8

course, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Simply put, a prisoner can not recover under section 1983 for *de minimis* physical and/or psychological injuries.

All of plaintiff's factual allegations, taken as true for the purposes of this Report, establish that on one particular date, Sgt. Freeman/Phoenix touched his penis. Plaintiff has not alleged that Freeman/Phoenix ever touched him before or after this single incident (which could have occurred in either September or October), and he does not allege the kind of "severe and repetitive" abuse or wanton and sadistic infliction of pain that rises to the level of an Eighth Amendment violation. Indeed, read liberally, plaintiff's complaint alleges that on another occasion Freeman/Phoenix indicated a desire to "see" plaintiff's penis and upon plaintiff's rebuff, Freeman/Phoenix denied him the right to take a shower for a week.[8]

The single, brief physical contact by Freeman/Phoenix coupled with the officer's verbal harassment, are not sufficiently serious and pervasive to permit redress under the Eighth Amendment. This determination is in accord with the reasoning of both *Boddie*, 105 F.3d at 861 (inmate was allegedly verbally harassed, fondled, and pressed against without his consent) and *Copeland*, 2001 WL 274738, *3 (inmate suffered unwanted touching); *see also Washington v. City of Shreveport*, 2006 WL 1778756 *6 (W.D. La. June 26, 2006) (inmate's breast was

---

[8]*Cf. e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 1999) (repeated requests for oral sex <u>and attempted rape</u> of inmate by prison guard may establish Eighth Amendment claim); *U.S. v. Walsh*, 194 F.3d 37 (2d Cir. 1999)(officer who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment); *Berry v. Oswalt*, 143 F.3d 1127 (8th Cir. 1998)(rape and harassment of inmate, including propositions, sexual comments, and attempts to perform nonroutine pat-downs violated inmate's Eighth Amendment right to be free from cruel and unusual punishment).

fondled, her inner thigh was touched, and sexual remarks made) (citing *Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (touching of inmate's buttocks by prison employees, though inappropriate and sanctioned by prison, does not violate the Eighth Amendment) and *Buckely v. Dallas County*, No. 397-CV-1649BC, 2000 WL 502845, *5 (N.D. Tex. April 27, 2000) (prison guards' fondling of inmate in an inappropriate manner while conducting a routine pat-down search did not violate Eighth Amendment).

In other words, all of plaintiff's allegations of sexual abuse, taken as true for the purposes of this report, establish no Constitutional violation.

### 3. Excessive Force

Plaintiff also claims that when he fled from his cell, Sgt. Freeman/Phoenix struck him with a radio causing bruises. When a prison guard is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In this instance, plaintiff admits that Freeman/Phoenix got physical only after plaintiff ran from his cell. Further, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.* at 10, 112 S.Ct. at 1000. Plaintiff was invited to provide additional details concerning the use of force; however, he provided no facts in support of that claim and alleged only that Freeman/Phoenix became "physical" and that he struck plaintiff with a portable radio. Based on the facts alleged, it does not appear that the defendant's use of force was either excessive or malicious and thus his claim does not state a

10

violation of the Eighth Amendment.

Nevertheless, even if this incident amounted to an Eighth Amendment violation, plaintiff's claim for monetary damages would be subject to dismissal due to the lack of any thing more than a *de minimis* physical injury. The Prison Litigation Reform Act states in pertinent part that no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. *See* 42 U.S.C.A. § 1997e(e).  The Fifth Circuit has equated § 1997e(e)'s "physical injury" requirement to the standard used under the Eighth Amendment; that is, an injury that is more than *de minimis*, but not necessarily significant. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  In this case, plaintiff has alleged nothing more than a *de minimis* physical injury – bruises on his head – and such injuries are simply insufficient to warrant the imposition of liability. *See Siglar*, *supra* (a sore, bruised ear lasting for three days was *de minimis*).  In sum, plaintiff has not stated an actionable § 1983 excessive force claim.

Further, to the extent that plaintiff claims that the actions of Freeman/Phoenix caused the injuries sustained in his abortive suicide attempt, he fails to state a claim since any injury he sustained was self-inflicted and thus not attributable to the acts or omissions of the defendants. *Compare Martinez v. Lueva*, 174 Fed. Appx. 235 (5th Cir. 2006) (unpublished)

### 4. Medical Care

For the first time in these proceedings, plaintiff, in his Amended Complaint filed on April 8, 2010, alleged fault on the part of a defendant identified as Dr. Hearne.  According to plaintiff, Hearne rejected all of plaintiff's "statements" and "neglected" further examination. Plaintiff has not alleged whether Dr. Hearne refused to treat his bruises or the injuries sustained when plaintiff

purposefully swallowed a chicken bone in an abortive attempt at suicide.

In any event, medical care claims when asserted by convicted prisoners, like plaintiff, are also analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994);  *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994);  *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).  Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5t Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

Plaintiff's allegations – accepted as true for the purposes of this analysis – fail to establish deliberate indifference on the part Dr. Hearne.  He has not shown that this defendant, or anyone else "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at 756 (5th Cir.2001).

Since plaintiff cannot demonstrate deliberate indifference on the part of the named defendant or any others his  medical care claim must also be dismissed as frivolous.

### *Conclusion*

While these incidents, if true, may potentially be the basis of a state tort action, the complained of conduct does "not involve a harm of federal constitutional proportions as defined by defined by the United States Supreme Court."  *See Boddie*, 105 F.3d at 861; *Copeland*, 2001 WL 274738, *3.  Having resolved the claims which provided the sole basis for original subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over any state law claims, should any remain.  28 U.S.C. § 1367(c).

For the foregoing reasons,

**IT IS RECOMMENDED** that plaintiff's civil rights action be **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B).

13

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers,  Monroe, Louisiana, June 30, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

14